IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**CHRISTINE L., on behalf of**
**LORRINGTON, L. (deceased),**

      **Plaintiff,**

v.                                                         Case No. 2:23cv132

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

      **Defendant.**

## REPORT AND RECOMMENDATION

Christine L. filed this action on behalf of Lorrington L. ("Plaintiff") pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of Defendant Kilolo Kijakazi, the Acting Commissioner of the Social Security Administration ("the Commissioner"), denying Plaintiff's claim for disability insurance benefits ("DIB"), and supplemental security income ("SSI") under the Social Security Act. This action was referred to the undersigned United States Magistrate Judge ("the undersigned") pursuant to 28 U.S.C. § 636(b)(1)(B)–(C), Federal Rule of Civil Procedure 72(b), Eastern District of Virginia Local Civil Rule 72, and the April 2, 2002, Standing Order on Assignment of Certain Matters to United States Magistrate Judges. ECF No. 8.

Presently before the Court is Plaintiff's brief in support of reversal and remand of the Commissioner's decision denying benefits, ECF No. 10, and the Commissioner's brief in support of the Commissioner's decision denying benefits, ECF No. 12. After reviewing the briefs, the undersigned makes this recommendation without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Eastern District of Virginia Local Civil Rule 7(J). For the following reasons,

the undersigned **RECOMMENDS** that the final decision of the Commissioner be **AFFIRMED**, and that this matter be **DISMISSED WITH PREJUDICE**.

## I. PROCEDURAL BACKGROUND

Plaintiff protectively filed applications for DIB and SSI on November 26, 2019, alleging disability due to multiple previous heart attacks, multiple strokes, multiple stents, hypertension, type two diabetes, and daily headaches. R. at 62–63, 65, 75.[1] Plaintiff's applications were initially denied on March 5, 2020, and again denied upon reconsideration on June 18, 2021. R. at 62–63, 105–106. On June 30, 2021, Plaintiff requested a hearing before an administrative law judge. R. at 185, 199.

A hearing was held on November 22, 2021, at which Plaintiff appeared with counsel before Administrative Law Judge Jason Miller ("the ALJ"). R. at 34–61. Both Plaintiff and an impartial vocational expert testified at the hearing. R. at 41–61. On March 3, 2022, the ALJ issued a decision finding Plaintiff not disabled. R. at 15–27. On May 2, 2022, Plaintiff filed a request with the Appeals Council to reconsider the ALJ's decision[2], which was denied on January 25, 2023, making the ALJ's decision the final decision of the Commissioner. R. at 1–3.

Having exhausted his administrative remedies, on March 30, 2023, Plaintiff filed a Complaint for judicial review of the Commissioner's decision. ECF No. 1. In accordance with the Supplemental Rules for Social Security Actions, on June 26, 2023, Plaintiff filed a brief in support of reversal and remand of the Commissioner's decision. ECF No. 10. On July 26, 2023, the Commissioner filed a brief in support of the Commissioner's decision denying benefits. ECF

---

[1] "R." refers to the certified administrative record that was filed under seal on May 26, 2023. ECF No. 6, pursuant to Eastern District of Virginia Local Civil Rules 5(B) and 7(C)(1).
[2] Plaintiff died on June 23, 2022. ECF No. 11 at 1.

No. 12. Plaintiff filed a reply brief on August 9, 2023. ECF No. 13. Because the matter is fully briefed, it is now ripe for recommended disposition.

## II. RELEVANT FACTUAL BACKGROUND

Plaintiff was fifty-three years old and was considered closely approaching advanced age at the time of his alleged disability onset date of September 2, 2017. R. at 64. He suffered from multiple heart attacks requiring stents, multiple stokes, hypertension, diabetes, and headaches. R. at 342.[3] At the time of his ALJ hearing, Plaintiff lived in Brooklyn, New York, and stayed in different places with family members. R. at 42. He reported having trouble with reading and writing in English, but could write things such as his name, a letter to a family member, or a grocery list. R. at 42.

At the ALJ hearing, Plaintiff testified that his past work included flagging services for Steadman Parking Services. R. at 45. He was responsible for blocking and directing traffic, as well as moving between job sites to "make sure [they were] okay." R. at 45–46. The VE testified that Plaintiff's employment would be a composite job, combining the position of flagger (DOT 372.667-022), and the position of parking lot supervisor (DOT 915.133-010). R. at 49. The VE testified that the flagger job was unskilled but became semiskilled based on Plaintiff's supervisory responsibility. R. at 49.

## III. THE ALJ'S DECISION

To determine if the claimant is eligible for benefits, the ALJ conducts a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015) (summarizing the five-step sequential evaluation). At step one, the ALJ considers whether the claimant has worked since the alleged onset date, and if so, whether that work

---

[3] Because Plaintiff's arguments assert only a legal error with the ALJ's decision involving Plaintiff's past work history, the court limits its discussion of Plaintiff's medical history.

3

constitutes substantial gainful activity. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the ALJ considers whether the claimant has a severe physical or mental impairment that meets the duration requirement. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). At step three, the ALJ determines whether the claimant has an impairment that meets or equals the severity of a listed impairment set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant does not have an impairment that meets or equals the severity of a listed impairment, the ALJ will determine the claimant's residual functional capacity, that is, the most the claimant can do despite her impairments. §§ 404.1545(a), 416.945(a). At step four, the ALJ considers whether the claimant can still perform past relevant work given his or her residual functional capacity. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Finally, at step five, the ALJ considers whether the claimant can perform other work. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The ALJ will determine the claimant is not disabled if: they have engaged in substantial gainful activity at step one; they do not have any severe impairments at step two; or if the claimant can perform past relevant work at step four. *See Jackson v. Colvin*, No. 2:13cv357, 2014 WL 2859149, at *10 (E.D. Va. June 23, 2014). The ALJ will determine the claimant is disabled if the claimant's impairment meets the severity of a listed impairment at step three, or if the claimant cannot perform other work at step five. *Id.*; *see also Mascio*, 780 F.3d at 634–35 (noting the ALJ will only determine the claimant's residual functional capacity if the first three steps do not determine disability).

Under this sequential analysis, the ALJ made the following findings of fact and conclusions of law:

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of September 2, 2017.[4] R. at 15. At step two, the ALJ found that Plaintiff had the following severe impairments: coronary artery disease; status-post stents placement with hypertension and hyperlipidemia; diabetes; and clinical obesity with resulting back pain. R. at 18. At step three, the ALJ considered Plaintiff's severe impairments and found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. R. at 20.

After step three, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work, with the following limitations:

> he can lift and/or carry 20 pounds occasionally, 10 pounds frequently. He can stand and/or walk, with normal breaks, for a total of 6 hours per 8-hour workday, and can sit, with normal breaks, for a total of 6 hours per 8-hour workday. . . . [H]e can occasionally climb, balance, steep, kneel, crouch, and crawl.

R. at 20

In making this determination, the ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 404.1529 and SSR 16-3p." R. at 21.

At step four, the ALJ determined that Plaintiff was incapable of performing his past relevant work as a parking assistant/flagger, which is considered light, unskilled work. R. at 26. In doing so, the ALJ evaluated the state agency personnel's workup of Plaintiff's past work, and agreed with the state agency personnel that Plaintiff's past work did not include the role of supervisor, but only a lead worker. R. at 26. The ALJ further concluded that the VE's

---

[4] The Plaintiff was paid $16,800 in the year 2018, after his alleged onset date. R. at 18. The ALJ left the hearing open for Plaintiff's representative to submit clarification regarding the Plaintiff's earnings, however, the representative did not provide any additional information. R. at 18. Because the ALJ concluded that Plaintiff was not disabled on other grounds, the ALJ deferred his step one finding as to whether these earnings represented substantial gainful activity and instead assumed that the earnings represented a type of deferred compensation from past employment. R. at 18.

classification of Plaintiff's past relevant work as a composite job containing the elements of a "parking lot supervisor" was not supported by the entirety of the record, specifically the evidence from the state agency personnel's assessment. R. at 26. In accepting the state agency personnel's categorization of Plaintiff's past work over the VE's classification, the ALJ explained that the state agency personnel's assessment "provided a more in-depth development of the [Plaintiff's] past work . . . including multiple discussions with the [Plaintiff] and attempts at developing the details and responsibilities of his past work." R. at 26. The ALJ concluded that although Plaintiff actually performed the parking assistant/flagger position at the medium exertional level, it is generally performed at the light exertional level, and accordingly Plaintiff had the RFC to perform his past work. R. at 26. Because Plaintiff could perform his past relevant work, the ALJ concluded that Plaintiff was not disabled from the alleged onset date, through the date of his decision, March 3, 2022. R. at 27.

## IV. **STANDARD OF REVIEW**

Under the Social Security Act, the Court's review of the Commissioner's final decision is limited to determining whether the decision was supported by substantial evidence in the record and whether the correct legal standard was applied in evaluating the evidence. *See* 42 U.S.C. § 405(g); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "'evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It consists of 'more than a mere scintilla of evidence but may be somewhat less than a preponderance.'" *Britt v. Saul*, 860 F. App'x 256, 260 (4th Cir. 2021) (quoting *Craig*, 76 F.3d at 589). The Court looks for an "accurate and logical bridge" between the evidence and the ALJ's

conclusions. *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018); *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016); *Mascio v. Colvin*, 780 F.3d 632, 637 (4th Cir. 2015).

In determining whether the Commissioner's decision is supported by substantial evidence, the Court does not "re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [Commissioner]." *Craig*, 76 F.3d at 589. If "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." *Id.* (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). Accordingly, if the Commissioner's denial of benefits is supported by substantial evidence and applies the correct legal standard, the Court must affirm the Commissioner's final decision. *Hays*, 907 F.2d at 1456.

## V. ANALYSIS

Plaintiff's appeal to this Court raises a single challenge to the ALJ's decision. Plaintiff argues that the ALJ erred by declining to classify Plaintiff's past work as a composite job. ECF No. 3–5. Plaintiff contends that because the Plaintiff's past work was a composite job, social security guidance prohibits the ALJ from finding Plaintiff could perform his past relevant work as generally performed. *Id.* According to Plaintiff, if a person's past relevant work is a composite job but the person can only perform it as generally performed and not as actually performed, the ALJ must find the person disabled at step five. *Id.* In response, the Commissioner argus that the ALJ appropriately concluded that Plaintiff's past work was not a composite job, and the ALJ followed the applicable regulations in concluding Plaintiff could perform his past relevant work as it was generally performed. ECF No. 12 at 10–15.

At step four of the sequential evaluation process, the ALJ must consider Plaintiff's RFC and past relevant work to determine if Plaintiff can still perform his past relevant work. §§

7

404.1520(a)(4)(iv), 416.920(a)(4)(iv). "Past relevant work in the regulatory scheme is a gauge by which to measure the physical and mental capabilities of an individual and the activities that he or she is able to perform, rather than a means by which to assure that the claimant can actually find employment." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995). To determine whether Plaintiff can perform his past relevant work, the ALJ may rely on job categories the Dictionary of Occupational Titles ("DOT"). SSR 82-61, 1982 WL 31387, at *2 (Jan. 1, 1982)). The DOT outlines job duties as they are generally performed by employers throughout the country. *Id.* However, when a former job "involve[s] functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy," the ALJ may consider whether the person can perform their past work as it was actually performed. *Id.*

As acknowledged in Social Security Ruling 82-61, information about a claimant's vocational background may be gathered through the claimant's own report, or contact with the employer. *Id.* When there are variations between the vocational data and the DOT, the ALJ may consider whether the work is a "composite job," which has "significant elements of two or more occupations and, as such, have no counterpart in the DOT." *Id.* ALJs are instructed to evaluate whether work qualifies as a composite job "according to the particular facts of each individual case." *Id.* The Program Operations Manual System ("POMS")[5] instructs that if an ALJ determines

---

[5] POMS is a guideline for ALJs that "explains the meaning of Social Security Act terms as well as the meaning intended by terms appearing within the regulations." *Davis v. Sec'y of Health & Human Servs.*, 867 F.2d 336, 340 (6th Cir. 1989) (internal citations omitted); SSR 13-2p, 2013 WL 621536, at *15 (Feb. 20, 2013) ("We require adjudicators at all levels of administrative review to follow agency policy ... and other instructions, such as the Program Operations Manual System (POMS) ...."); *see Teresa C. v. Saul*, No. 3:19cv462, 2020 WL 5228161, at *11 n.5 (E.D. Va. Aug. 17, 2020). However, while POMS may be persuasive, it "*does not* have the force and effect of law." *Davis*, 867 F.2d at 340 (emphasis added).

that a claimant's past relevant work was a composite job, he must explain how he reached that conclusion. Program Operations Manual System ("POMS") DI 25005.020B.

Further, because a composite job "has no equivalent in the DOT," if the ALJ determines that the claimant's past relevant work was a composite job, the ALJ can only find the claimant capable of performing that work if he or she can perform all parts of the job as it was *actually performed*. *Taylor v. Colvin*, No. 1:14cv629, 2015 WL 4726906, at *4 (M.D.N.C. Aug. 10, 2015) (quoting *Shealy v. Colvin*, No. 8:13–2383, 2015 WL 467726, at *12–13 (D.S.C. Feb. 4, 2015)). The Social Security Administration's POMS further illustrates this by explaining that ALJs can only "find the claimant capable of performing the composite job only if he or she can perform all parts of the job," and further instructs ALJs "not [to] evaluate it at the part of step [four] considering work "as generally performed in the economy." POMS DI 25005.020(B).

While Plaintiff argues at length that because Plaintiff's past relevant work is a composite job the ALJ erred by disregarding the POMS and finding that Plaintiff could perform his past work as a Flagger as generally performed, the Court need not reach that argument because the ALJ did not err in finding that Plaintiff's past relevant work was not a composite job in the first instance. Courts have found error in an ALJ's analysis of a composite job where the ALJ failed to consider the possibility of a composite job or where the ALJ failed to sufficiently analyze the components of the composite job. *Douglas E. v. Kijakazi*, No. CV 20-2126, 2022 WL 684122, at *7 (D. Md. Mar. 8, 2022) (remanding on the grounds that the ALJ failed to offer an explanation as to whether the plaintiff's job qualified as a composite job, and noting that even if the ALJ declined to classify the job as a composite job, the ALJ was required to further explain his reasoning); *Carothers v. Saul*, No. 1:18cv00330, 2019 WL 4979978, at *4 (W.D.N.C. Oct. 8, 2019) (requiring the ALJ on remand to explain whether the plaintiff's past relevant work qualifies as a composite job, and if

9

so, to explain whether the plaintiff was capable of performing the job as it was actually performed); *Jones v. Colvin*, No. 3:15cv195, 2016 WL 786626, at *3 (E.D. Va. Feb. 4, 2016) (collecting cases involving courts in the Fourth Circuit requiring an analysis of composite jobs), *report and recommendation adopted*, No. 3:15cv195, 2016 WL 816792 (E.D. Va. Feb. 26, 2016).

However, in the instant case, the ALJ provided a robust analysis explaining why he declined to classify Plaintiff's past relevant work as a composite job. R. at 26. First, the ALJ detailed the state agency personnel's workup of Plaintiff's past relevant work leading to the conclusion that his work was classified as a "Flagger" in the DOT. The ALJ explained that Plaintiff's duties involved training other workers, completing handwritten work orders, and spent most of his day flagging alongside the workers he trained. R. at 26. The ALJ further highlighted that Plaintiff did *not*: hire or fire workers, use computers or have other technical knowledge, or conduct performance evaluations. Accordingly, the ALJ agreed with the state agency personnel's conclusion that Plaintiff did not have past work as a supervisor, but rather, only as a lead worker, and was therefore properly classified as a "Flagger." R. at 26.

Further explaining his reasoning, the ALJ detailed why he did not accept the VE's classification of Plaintiff's past relevant work as a composite job. R. at 26. The ALJ explained that the VE's testimony was not consistent with or supported by the entirety of the record, including the workup done by the state agency personnel. R. at 26. The ALJ explained that the analysis done by the state agency personnel was more in-depth, and involved multiple discussions with the Plaintiff and attempts to develop the details of his past work, as compared to the VE's in-hearing testimony. R. at 26.

To further argue that the ALJ erred in failing to classify Plaintiff's past relevant work as a composite job, Plaintiff points to the Work History Report he completed on behalf of his disability

10

claim. *See* ECF No. 13 at 3; R. at 318–26. Plaintiff points to his own report stating that he placed workers on specific worksites, relieved workers who were on breaks, wrote out work orders, stayed in contact with Con Edison regarding worksites, as well as his report that he supervised fifteen to twenty-five people and spent most of his time supervising. ECF No. 13 at 3; R. at 319. However, Plaintiff completed the Work History Report on December 21, 2019. R. at 324. On March 24, 2021, the state agency determined it needed more vocational documentation about Plaintiff's work to proceed with a final adjudication. ECF No. 342–43. On June 9, 2021, state agency personnel contacted Plaintiff to obtain more information about his job and determined that Plaintiff spent most of his time flagging (nine to ten hours), completed work orders by hand on an ongoing basis, and did not apply technical knowledge. R. at 349. State agency personnel further determined Plaintiff was responsible for securing individuals to work long shifts and relieve existing workers, and trained workers to do the work he did and worked alongside those workers. R. at 349. Based on this information, on June 11, 2021, state agency personnel determined that Plaintiff was a lead worker but not a supervisor, and most closely matched the DOT entry of Flagger. R. at 351. Accordingly, the state agency personnel's determination was made based on additional conversations with Plaintiff, compared to Plaintiff's prior Work History Report that Plaintiff relies upon now.

Unlike *Douglas E.* and *Carothers*, in this case, the ALJ here thoroughly considered the possibility that Plaintiff might have had a composite job, and reviewed Plaintiff's job duties as gathered by the state agency personnel. R. at 26. He explained that although Plaintiff trained and scheduled other workers, he was not responsible for hiring or firing, and did not conduct performance evaluations. R. at 26. The ALJ reviewed all the relevant evidence, including Plaintiff's Work History Report, testimony at the ALJ hearing, and the extensive workup done by

state agency personnel, and provided a robust explanation why he chose not to classify Plaintiff's past relevant work as a composite job that acknowledged all of the evidence presented. R. at 26. Given the ALJ's robust analysis, it is not this Court's place to "weigh the evidence differently" or "to second-guess the ALJ's considered decision." *Pepper v. Comm'r of Soc. Sec. Admin.*, No. 22-1381, 2023 WL 3073532, at *2 (4th Cir. Apr. 25, 2023) (citing *Shinaberry v. Saul*, 952 F.3d 113, 123 (4th Cir. 2020)). Accordingly, the ALJ did not err and substantial evidence supports the decision.

## VI. RECOMMENDATION

Because substantial evidence supports the Commissioner's decision and the correct legal standard was applied, the undersigned **RECOMMENDS** that the final decision of the Commissioner be **AFFIRMED**, and that this matter be **DISMISSED WITH PREJUDICE**.

## VII. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of the Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is forwarded to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment

of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to the counsel of record for Plaintiff and the Commissioner.

/s/ Lawrence R. Leonard
Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
November 6, 2023